**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| BENJAMIN T. SHIELDS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 4:04cv38 |
| | : | |
| DEPARTMENT OF THE NAVY | : | |
| and SECRETARY OF THE NAVY, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| BENJAMIN T. SHIELDS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 4:04cv69 |
| | : | |
| GORDON R. ENGLAND, | : | (CONSOLIDATED) |
| Secretary of the Navy, and | : | |
| DEPARTMENT OF THE NAVY, | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

Plaintiff Benjamin T. Shields ("Shields"), a self-described 1,000 meter sharpshooter, was removed from his civil service position with the United States Department of the Navy ("Navy") for allegedly threatening to kill all of his co-workers with an "AK-47" assault rifle.  He subsequently filed this pro se action alleging, among other things, that the Navy fabricated the threat allegation as retaliation for his previously having filed numerous complaints with the Navy's Equal Employment Opportunity

1

Office ("EEO").  The matter is now before the Court on defendants' consolidated Motion for Summary Judgment and Motion to Dismiss. (Docket No. 27).  For the reasons stated below, the Court **DENIES** the Motion for Summary Judgment and **PARTIALLY GRANTS** the Motion to Dismiss.

## I.  Factual and Procedural History

    Plaintiff Shields was an Electrical Engineering Technician at the Navy Public Works Center, Naval Weapons Station in Yorktown, Virginia.  While employed by the Navy, plaintiff Shields filed formal complaints with the EEO on February 10, 2000; August 7, 2000; October 23, 2000; November 9, 2000; and March 14, 2001.  These complaints asserted numerous violations, ranging from failure to accommodate his phobia of bridges and tunnels to retaliation.

    The events that give rise to the instant case occurred in 2001.  Mr. Ernest West, plaintiff's temporary supervisor, asserts that on February 12 of that year, plaintiff Shields threatened to kill his co-workers.  According to Mr. West, plaintiff Shields was in a rage with his arms raised and teeth clenched when he stormed into Mr. West's office.  Mr. West claims that plaintiff stated he was "tired of it" and that he was going to "get an AK-47 and kill everyone in Buildings 6 and 16."  Following this incident, plaintiff was taken to the base infirmary and then placed in police custody.  After attempting to interrogate plaintiff and searching his vehicle, base security removed him

from the Yorktown Naval Weapons Station.

Plaintiff Shields was placed on administrative leave with pay pending an investigation into the incident conducted by Commander Mark Jackson ("CDR Jackson").  When CDR Jackson requested as part of his investigation that plaintiff address the threat allegations, plaintiff's only response was to state, "I, Benjamin T. Shields, did not make threatening statements to Mr. Ernest West as alleged in reference (a)."  (Def. Ex. 30).  No further explanation was provided by plaintiff.  Upon conclusion of his investigation, CDR Jackson ordered that plaintiff Shields be removed from his employment effective May 25, 2001.

Plaintiff Shields appealed his initial suspension to the United States Merit Systems Protection Board ("MSPB") on April 2, 2001.  On June 29, 2001, plaintiff Shields appealed his removal to the MSPB.  Both appeals claimed that 1) the Navy had violated its personnel practices and procedures and 2) the Navy had terminated plaintiff's employment as reprisal for his previous EEO complaints.

MSPB consolidated plaintiff's appeals and, after conducting a hearing, rendered an initial decision against plaintiff on November 26, 2002.  Plaintiff Shields appealed again to the MSPB and received a Final Order dated March 5, 2004, affirming the previous MSPB decision.

On March 24, 2004, plaintiff Shields filed a timely petition with the Equal Employment Opportunity Commission Office of Federal Operations ("EEOC-OFO"), asking it to review that portion

of the MSPB's Final Order that denied his claim of retaliation. On May 13, 2004, the EEOC-OFO issued a final decision finding that no retaliation took place.  Plaintiff Shields thereafter timely filed these actions, which the Court consolidated by Order dated December 12, 2004.  (Docket No. 21).

## II.  Principles of Summary Judgment

The standards courts apply in their consideration of motions for summary judgment are well-established.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).

An otherwise proper summary judgment motion will not be defeated by a mere factual dispute between the parties unless the dispute concerns a "genuine issue of material fact." Anderson, 477 U.S. at 247-48; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of

4

the suit under the governing law will properly preclude the entry
of summary judgment." Anderson, 477 U.S. at 248; see also
Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).  A
"genuine" issue concerning a "material" fact arises when the
evidence is sufficient to allow a reasonable jury to return a
verdict in the nonmoving party's favor.  Anderson, 477 U.S. at
248; Commerce Funding Corp. v. Worldwide Sec. Svcs. Corp., 249
F.3d 204, 209-10 (4th Cir. 2001); Brinkley v. Harbour Recreation
Club, 180 F.3d 598, 614 (4th Cir. 1999).  The evidence presented
must be such that a reasonable jury could find in favor of the
nonmoving party.  Anderson, 477 U.S. at 252; Retail Servs. Inc.
v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004); Tao of
Sys. Integration, Inc. v. Analytical Services, 330 F. Supp. 2d
668, 671 (E.D. Va. 2004).

A court "must take special care" when considering a summary
judgment motion in an employment discrimination case because the
employer's "motive is often the critical issue." Beall v. Abbott
Labs., 130 F.3d 614, 619 (4th Cir. 1997); Evans v. Techs.
Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996);
Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005
(4th Cir. 1987).[1]  Nevertheless, summary judgment remains an

---

[1] The liberal construction applied to a pro se complaint has
its limits.  Beaudett v. City of Hampton, 775 F.2d 1274, 1278
(4th Cir. 1985); Johnson v. Pearson, 316 F. Supp. 2d 307, 313-14
(E.D. Va. 2004); Bracey v. Buchanan, 55 F. Supp. 2d 416, 421
(E.D. Va. 1999).  The Court is not required to "conjure up
questions never squarely presented" in the complaint.  Beaudett,
775 F.2d at 1278; see also Levy v. Jensen, 285 F. Supp. 2d 710,
713 (E.D. Va. 2003); Bracey, 55 F. Supp. 2d at 421.  "District

appropriate disposition when the plaintiff is unable to prevail
on his or her discrimination claims as a matter of law.  <u>Beall</u>,
130 F.3d at 619; <u>Evans</u>, 80 F.3d at 958-59.

### III.  Analysis

In addition to the retaliation claim that is the principal
focus of this action, plaintiff Shields asserts that the Navy
subjected him to a hostile work environment; physically and
sexually abused him; and discriminated against him on the basis
of his age, gender, race, religion, place of birth, disability
(phobia of bridges and tunnels), and "[w]histle blowing."  (Case
No. 4:04cv69, Docket No. 1).  Before plaintiff Shields can bring
these claims before the Court, he first must exhaust his
administrative remedies.  <u>Laber v. Harvey</u>, 438 F.3d 404, 416 (4th
Cir. 2006).  Plaintiff must then file suit within 90 days of the
EEOC-OFO's ruling. 42 U.S.C. § 2000e-16(c).

Plaintiff Shields has not met the prerequisites necessary to
litigate his non-retaliation claims in United States District
Court.  While he filed numerous EEO complaints, only one went to
final decision by the EEOC-OFO.  That decision, which addressed
plaintiff Shield's claims of hostile work environment and
harassment, was rendered on October 20, 2003.  However, plaintiff

---

judges are not mind readers.  Even in the case of <u>pro</u> <u>se</u>
litigants, they cannot be expected to construct full blown claims
from sentence fragments." <u>Beaudett</u>, 775 F.2d at 1278; <u>see</u> <u>also</u>
<u>Johnson</u>, 316 F. Supp. 2d at 313-14; <u>Bracey</u>, 55 F. Supp. 2d at
421.

Shields did not file this action until April 2, 2004 -- more than 165 days later.  As a result, the only issue properly before the Court is whether the Navy's suspension and termination of plaintiff Shields' employment were in retaliation for his prior EEO complaints.

A.  McDonnell-Douglas Test

It is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII of the Civil Rights Act of 1964 ("Title VII").  42 U.S.C. § 2000e-3(a).  Plaintiff Shields can prove that the Navy violated this anti-retaliation statute by proceeding in one of two ways.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004); EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992); Goldberg v. B. Green & Co., 836 F.2d 845, 847-48 (4th Cir. 1988).  First, he may establish a claim for discrimination "under the ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue."  Clay Printing Co., 955 F.2d at 940; see also Diamond, 416 F.3d at 318; Hill, 354 F.3d at 284; Goldberg, 836 F.2d at 847.  Alternatively, plaintiff Shields may proceed under the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  See Diamond, 416 F.3d at 318;

Hill, 354 F.3d at 285; Clay Printing Co., 955 F.2d at 940;
Goldberg, 836 F.2d at 847.

Because plaintiff Shields has not presented evidence of
discriminatory intent, the Court will examine his claim of
retaliation using the McDonnell Douglas burden-shifting
framework.  See Hill, 354 F.3d at 284-85; Thompson v. Potomac
Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Brinkley, 180
F.3d at 606-07; El v. Tek Sys., Inc., 311 F. Supp. 2d 516, 519
(E.D. Va. 2002); Wilder v. Southeastern Pub. Serv. Auth., 869 F.
Supp. 409, 413 (E.D. Va. 1994).

Under the McDonnell Douglas framework, a plaintiff asserting
a claim under Title VII has the initial burden of proving a prima
facie case of discrimination by a preponderance of the evidence.
McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co.
v. Hernandez, 540 U.S. 44, 50 (2003); St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 506 (1993); Mackey v. Shalala, 360 F.3d 463,
468 (4th Cir. 2004).

Once the plaintiff establishes a prima facie case, the
burden shifts to the defendant to articulate a "legitimate,
nondiscriminatory reason" for the defendant's employment action.
McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co.,
540 U.S. at 50; St. Mary's Honor Ctr., 509 U.S. at 506-07;
Mackey, 360 F.3d at 468.  If the defendant meets this burden,
then "the presumption raised by the prima facie case is rebutted"
and the presumption "drops from the case."  St. Mary's Honor
Ctr., 509 U.S. at 507 (quoting Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 255 & n.10 (1981)); see also Mackey, 360 F.3d at 468.  The plaintiff then must have a "full and fair opportunity" to demonstrate, through the presentation of its own evidence and the cross-examination of the defendant's witnesses, that the defendant's proffered reason for its employment decision was not the true reason, but was merely a pretext for discrimination.  St. Mary's Honor Ctr., 509 U.S. at 507-08; Burdine, 450 U.S. at 253, 255-56; Hill, 354 F.3d at 285; see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). Although the McDonnell Douglas framework shifts the burden of production between the parties, the plaintiff retains the "ultimate burden" of persuasion.  St. Mary's Honor Ctr., 509 U.S. at 508; Burdine, 450 U.S. at 253; see Hill, 354 F.3d at 285.


## B.  Retaliation

To establish a prima facie case of retaliation, plaintiff Shields must prove that: (i) he engaged in a protected activity; (ii) he suffered an "adverse employment action"; and (iii) a causal connection existed between the protected activity and the asserted adverse action.  See Honor, 383 F.3d at 188; Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004); King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003); Giang v. Potter, 369 F. Supp. 2d 763, 769 (E.D. Va. 2005).

The first two elements are easily met.  Plaintiff engaged in protected activities when he filed numerous EEO complaints. Further, his permanent removal is undeniably an adverse

employment action.  The only serious question is whether plaintiff can establish a causal connection between the agency's removal action and his prior filing of EEO complaints.

In order to establish the requisite causal connection, a plaintiff must show that the alleged retaliation closely followed his protected activity and that the relevant decisionmaker was aware of the protected activity.  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 655 (4th Cir. 1998); see Hooven-Lewis, 249 F.3d at 277-78; Gibson v. Old Town Trolley Tours of Wash., D.C., Inc., 160 F.3d 177, 181 (4th Cir. 1998).  Since "an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."  Dowe, 145 F.3d at 657.

In the present action, CDR Jackson decided to remove plaintiff Shields from government service at a time that several of plaintiff's EEO claims were pending.  CDR Jackson avers under oath that "I was unaware that Mr. Shields had filed any such [EEO] complaints." (Def. Ex. 32, p. 4).  CDR Jackson also avers that he reviewed many relevant documents in reaching his decision, including "an investigative report of the Naval Criminal Investigative Service ['NCIS']."   (Def. Ex. 32, p.4).

CDR Jackson's averments are in conflict.  On the one hand, he claims no knowledge of plaintiff Shields' EEO complaints.

However, the NCIS report contained at least two separate entries
which identify those complaints.  The NCIS investigator reported
that

>           S/SHIELDS declined interrogation requesting a
>           lawyer, but stated he did not make the
>           threat.  He further stated the allegation
>           that he had threatened to kill everyone in
>           those buildings was made as reprisal for the
>           EEO complaints he had made against Command
>           and which he had reported to the Federal
>           Bureau of Investigation (FBI).

(Def. Ex. 32, NCIS Report Feb. 21, 2001.)  Similar information
was discussed in Exhibit 1 to the report:

>           He [Shields] repeated several times, however,
>           that he had done nothing wrong.  He stated he
>           never made any threats, but that these
>           accusations were being made as retaliation
>           for several EEO complaints he had made
>           against the Command.  When asked about the
>           complaints, S/SHIELDS repeated that he wanted
>           the presence of an attorney prior to any
>           questioning.  He stated he had reported the
>           actions of management at the Public Works
>           Center, Naval Weapons Station, Yorktown, VA
>           to the Federal Bureau of Investigation (FBI)
>           previously and was intending to go to the FBI
>           to report how he had been treated at the
>           Naval Weapons Station that day.

(Def. Ex. 32, NCIS Report, Ex. 1).  At this stage of the
litigation, the Court must assume that CDR Jackson knew of the
prior EEO complaints because that information was included in the
NCIS report that he reviewed.  Plaintiff therefore has made out a
prima facie case.

     As permitted by the McDonnell Douglas framework, defendants
seek to rebut plaintiff's prima facie case by asserting that
plaintiff's threat to kill his co-workers with an AK-47 rifle
serves as a legitimate nondiscriminatory reason for removing

plaintiff from his employment.  The Court agrees that such a
threat would establish a legitimate excuse; however, whether
plaintiff actually made the threat is in dispute.  Plaintiff
Shields has consistently denied threatening to kill his co-
workers.  While his denials may appear suspect, the "facts and
inferences drawn therefrom" must be construed on summary judgment
in the light most favorable to the non-moving party, _i.e._,
plaintiff Shields.  <u>Seabulk Offshore, Ltd. v. Am. Home Assurance
Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004); <u>Spriggs v. Diamond Auto
Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001).  Only plaintiff Shields
and Mr. West know for certain whether the threat was made on
February 12, 2001.  And, only the trier of fact can determine
which recollection is true.[2]


## IV.  Conclusion

     For the reasons stated above, the Motion for Summary
Judgment of defendants England and the Department of the Navy is
**DENIED**.  The defendants' Motion to Dismiss is **GRANTED** as to all
claims other than retaliation.

------------------------------------------------------------

     [2]If forced to make a factual determination at this juncture,
the Court would be inclined to credit Mr. West's recollection
over that of the plaintiff, especially in light of plaintiff's
actions in open court during the hearing held on April 11, 2005.
As part of his oral argument, plaintiff Shields stated on the
record, "I hate the government more than I hate anything in the
world.  And I really hate the Navy.  I despise the Department of
the Navy."  Shields then turned and pointed to three Department
of the Navy representatives seated in the gallery and stated, "I
could take and murder him, and murder him, and murder her, and be
happy."  (Docket No. 37, p.5).

The Clerk is hereby **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Walter D. Kelley, Jr.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 29, 2006